## Wright *et al. versus* Davenport.

1. The Act of April 16th 1850, § 40–45 (Insolvent Banks), construed.

2. The 45th section contemplates the single case of a report of the auditors *finding fraudulent insolvency.*

3. When the report is that the insolvency is not fraudulent the proceeding is at an end and an issue cannot be ordered.

4. On an issue to try whether the insolvency of a bank was fraudulent, the court charged: "The Act of Assembly pronounces every insolvency fraudulent, primâ facie, and this presumption shall be rebutted only by proof on an investigation that the affairs of the bank had been honestly and legally administered by its officers and directors. No actual fraud or corrupt mismanagement, or embezzlement of the funds is necessary to be shown. The fact of insolvency is declared to be a legal fraud, and this judgment of the law remains until rebutted by proof." *Held* to be error.

5. In such issue the question is to be tried without any primâ facie imputation of fraud.

October 17th 1870.    Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Erie county :* No. 160, to October and November Terms 1869.

This was a feigned issue, ordered August 12th 1865, "to try the fraudulent insolvency of the Bank of Commerce from the auditor's report."

The issue was ordered to be made up between S. A. Davenport, assignee of the Bank of Commerce, plaintiff, and C. B. Wright and twelve others, defendants, and that the plaintiff should declare in *indebitatus assumpsit.*

The origin of this case was as follows : The Erie City Bank was organized in August 1853, under an act of incorporation, approved April 5th 1853 ; it suspended in December 1856. In April 1858 it was reorganized under the name of the Bank of Commerce, its name having been thus changed upon application to the court. It continued to do business until the 20th of November 1860, when it closed its doors.

The defendants in this issue were the officers and directors at the time the bank suspended. On the 10th of January 1862, the bank made an assignment to the plaintiff in the issue, and filed a statement of the condition of its affairs.

The court appointed three auditors " to make a strict investigation of the affairs of the bank, and of the accuracy and fairness of the statement presented to the court." A report was made in September 1863, signed by two of the auditors : they say "they are called upon to characterize the management of the bank from November 1854 to its suspension in 1856 as extremely prejudicial to its interests and disastrous to its prospects ;" and also " that since the time of resumption in 1858 it appears to have been carefully managed."

The proceedings were under the following sections of the Act

of April 16th 1850, Pamph. L. 492, 493, Purd. 103, 104, pl. 108–113 :—

"Sect. 40. If the insolvency of the said bank be occasioned by the fraudulent conduct of the directors of the said bank, the directors, by whose acts or omissions the insolvency was in whole or part occasioned, and whether then in office or not, shall each be liable to the stockholders and creditors of the said bank for his proportional share of the losses, the proportion to be ascertained by dividing the whole loss amongst the whole number of directors liable for its reimbursement.

"Sect. 41. The insolvency of every bank hereafter incorporated shall be deemed fraudulent unless its affairs shall appear, upon investigation, to have been fairly and legally administered, and with the same care and diligence that agents receiving a compensation for their services are bound by law to observe.

"Sect. 42. The term insolvency used in this act shall be construed to apply to the said bank when it is compelled to make an assignment according to the provisions of this act; and it shall thereupon be the duty of the directors of the said bank, for the time being, within ten days after such assignment, to file in the office of the prothonotary of the Court of Common Pleas or District Court of the proper county, verified by oath or affirmation, a full statement of its affairs, containing, &c. * * *

"Sect. 43. If the court shall be in session when the statement is filed, the same shall be immediately presented to the court by the said directors for examination; and if the court shall not be in session at such time, then the said statement shall be presented upon the first day of the session of the court thereafter; and it shall thereupon be the duty of the court to appoint three competent auditors, who shall be sworn or affirmed, to make a strict investigation of the affairs of such bank, and of the accuracy and fairness of the statement thus presented to the court, and to perform their duties with fidelity.

"Sect. 44. The auditors thus appointed shall have power to compel the production of the books and papers, and to subpœna and examine the directors and officers of such bank, and generally to have and exercise all the authority now conferred on auditors by existing laws; and, after having performed their duties, they shall report to the court the result of their investigation; and in case they report that the insolvency was fraudulent, it shall be their duty also to ascertain and report the amount due from the several directors, according to the liabilities imposed by this act.

"Sect. 45. The said court shall thereupon proceed to the investigation of the matters contained in said report, and shall determine whether the insolvency of such bank was fraudulent or otherwise; or, if they deem it necessary for the purpose of justice, they may direct an issue at the request of any person interested, to try the

fact of fraudulent insolvency; and if the judgment of the court upon the report of the auditors, or upon the verdict rendered upon such issue, shall be that the insolvency of such bank was fraudulent, then and in such case the said court shall proceed to decree against the directors the amount due from each according to their several liabilities; and the said Court of Common Pleas or District Court, for the purpose of carrying into effect the provisions of this act, shall have the same powers and authorities to obtain the appearance of persons, and to compel obedience to their orders and decrees and enforce execution thereof, as are by law vested in the said courts in cases of trust."

On the 2d of September 1865, a declaration in assumpsit was filed. On 12th a rule was granted to show cause why the issue should not be stricken off. Dec. 1st 1865, on motion of plaintiff's counsel, form of issue changed by striking out the words, "*indebitatus assumpsit,*" and substituting *case,* and pleadings to be altered accordingly. On the 5th a declaration in case was filed. On the 16th of June 1866 the rule to strike off the issue was discharged, to which the defendants excepted, and the court sealed a bill of exceptions. November 22d the defendants entered a rule for a special jury. November 30th the court directed that the jury be struck on the third Monday of December.

" The cause came on for trial December 12th 1866. A struck jury had been theretofore ordered, and but twenty-five jurors answering, defendants' counsel moved for leave to strike from the entire list of jurors drawn for the term. This the court overruled, and ordered that the striking be from those jurors present." The defendants excepted, and the court sealed a bill of exceptions.

The plaintiff gave in evidence the assignment of the bank to the plaintiff; the statement of the directors of the bank filed to February Term 1862; also the condition of the Erie City Bank, and evidence for the purpose of showing the fraudulent insolvency of the Bank of Commerce. He offered legislative documents for 1861 showing the statements of the bank. The offer was objected to by the defendants, admitted, and a bill of exceptions sealed. The plaintiff closed.

The defendants offered the report of the auditors in evidence, the plaintiff objected, the offer was rejected, and a bill of exceptions sealed.

The defendants submitted these points:—

1. If the bank was insolvent when it passed into the hands of defendants, the charge of fraudulent insolvency is not imputable to them.

2. To make the defendants liable, the evidence must satisfy the jury that they were guilty of fraud in producing the insolvency of the bank.

3. Fraud is not to be presumed; its positive existence must be

[Wright v. Davenport.]

shown; and if it has not been, the verdict must be for the defendants.

4. Mismanagement, or errors in judgment in the affairs of the bank, unless purposed, and the result of fraudulent intention, will not make the defendants liable.

5. If there were directors—other than the defendants—in the management of the bank when it first failed and afterwards, and they are not made parties to the present issue, there can be no recovery against the defendants.

6. If there should be a verdict against the defendants, it must be against all or none.

The court answered the points as follows:—

" 1. This point is answered in the negative. If the new organization was insolvent at its inception, and this fact was known to those who composed and managed the organization, and upon its rotten foundation they built the superstructure of a bank and issued a large circulation, promises to pay, which were represented and intended to be taken by the community as good and solvemt, it would be fraudulent. The insolvency would be fraudulent. The Act of Assembly was passed just or mainly to guard against such like fraudulent organizations. If it was insolvent no notes should have been issued. If they had not been issued, there would have been no insolvency. Their insolvency was the result of the issue. Then, if their issue was fraudulent, their insolvency was fraudulent, and that fraudulency is attributable to those who made out and put that issue into circulation."

" 2. This point answered in the negative, with the explanation in its answer to the defendant's 3d point."

" 3. The Act of Assembly pronounces every insolvency fraudulent primâ facie, and this presumption shall be rebutted only by proof on an investigation that the affairs of the bank had been honestly and legally administered by its officers and directors. No actual fraud or corrupt mismanagement, or embezzlement of the funds, is necessary to be shown. The fact of insolvency is declared to be a legal fraud, and this judgment of the law remains until rebutted by proof. The issue framed is for the purpose mainly of allowing the directors to prove that the affairs of the bank have been fairly and legally administered. Of course it must appear in that investigation that its affairs were administered unfairly and illegally. This is the converse of the proposition, and the verdict affirms as true one or the other of those propositions."

" 4. Our last answer applies to this point. Men are presumed to intend just what they accomplish. Legal frauds are often perpetrated without any intention of the party implicated in them. While the rule as to the proof of fraud indicated in these points is true in its general application to the conduct and affairs of men, I cannot affirm it as correct in its application to the case under

consideration, because the legislature have prescribed a different rule for our guidance in such an issue as the one before us. Mere errors of judgment would not authorize a verdict of fraudulent insolvency."

" 5. We decide this point in the negative."

" 6. The issue you are sworn to try is the fact of fraudulent insolvency. The question of whether the defendants named are too many or too few is one not involved in our present duty. The issue is formed between the assignee and those who appear by the books of the bank to have been the directors elect at the time it closed its motions. The issue is for a specific purpose. The parties on the record are sufficient for the attainment of that purpose, and whether it embraces more or less than may appear to have been in default, is a matter of no material consequence."

The verdict of the jury was: " They find the Bank of Commerce fraudulently insolvent, and further find that this was attributable to the acts and omissions of C. B. Wright, one of its directors."

February 1867. A rule to show cause why the verdict of the jury should not be set aside was made absolute so far as to strike out that part of the verdict designating C. B. Wright as the only party implicated, as surplusage, and discharged as to balance.

The defendants took out a writ of error, and assigned for error:

1. Ordering the issue.

2. Refusing leave to strike the jury from the whole list.

3. Changing the form of the issue.

4. Refusing to admit the report of the auditors in evidence.

5–10. The answers to the points.

*W. H. Rawle* (with whom were *J. C. Marshall, F. F. Marshall* and *Derrickson*), for plaintiffs in error.

*J. H. Walker* (with whom was *S. A. Davenport,* p. p.), for defendant in error.

The opinion of the court was delivered, January 3d 1870, by

READ, J.—The decision of this case depends upon a fair construction of the Act of the 16th April 1850, regulating banks. This act, with its kindred legislation, has been practically swept away by the establishment of national banks, and deprives the case of the interest which would arise if it were to form a precedent for the future.

By the 42d section, " The term insolvency used in this act shall be construed to apply to the said bank, when it is compelled to make an assignment according to the provisions of this act;" and by the 41st section, " The insolvency of every bank hereafter incorporated shall be deemed fraudulent, unless its affairs shall

[Wright *v.* Davenport.]

appear, upon investigation, to have been fairly and legally administered, and with the same care and diligence that agents receiving a compensation for their services are bound by law to observe."

By the 40th section, "If the insolvency of the said bank be occasioned by the fraudulent conduct of the directors of the said bank, the directors by whose acts or omissions the insolvency was in whole or in part occasioned, and whether then in office or not, shall each be liable to the stockholders and creditors of the said bank for his proportional share of the losses, the proportion to be ascertained by dividing the whole loss amongst the whole number of directors liable for its reimbursement."

Within ten days after the assignment, it is the duty of the directors for the time being to file in the office of the prothonotary, on oath or affirmation, a full statement of its affairs, containing the particulars specifically mentioned in the 42d section.

This statement must be immediately presented to the court by the directors, for examination, and if the court is not in session, then upon the first day of the session of the court thereafter ;— " and it shall thereupon be the duty of the court to appoint three competent auditors, who shall be sworn or affirmed to make a strict investigation of the affairs of such bank, and of the accuracy and fairness of the statement thus presented to the court, and to perform their duties with fidelity."

By the next section, "The auditors thus appointed shall have power to compel the production of books and papers, and to subpœna and examine the directors and officers of such bank, and generally to have and exercise all the authority now conferred on auditors by existing laws ; and after having performed their duties, they shall report to the court the result of their investigations ;— and in case they report that the insolvency was fraudulent, it shall be their duty also to ascertain and report the amount due from the several directors, according to the liabilities imposed by this act."

The provisions in the next section clearly contemplate the single case of a report by the auditors of a fraudulent insolvency, with the amount due by the directors. In such case the court proceeds to examine the matters contained in the report, "and shall determine whether the insolvency of such bank was fraudulent or otherwise," or they may direct an issue "to try the fact of fraudulent insolvency ;" and if the judgment of the court, upon the report of the auditors, or upon the verdict rendered upon such issue, shall be that the insolvency of such bank was fraudulent," [it will be observed the sole inquiry here is—was the insolvency fraudulent ?] "then and in such case the said court shall proceed to decree against the directors the amount due from each, according to their several liabilities." It is clear that an issue only can determine the question of fraudulent insolvency, and the court

must resort to the report of the auditors for the amount due by the directors, and their several liabilities, and for this purpose the court is given the same powers as are by law vested in them in cases of trust.

It is clear therefore that this whole section has no application except where the auditors report a fraudulent insolvency, and the amount due by the directors. Where the report is that the insolvency was not fraudulent the whole proceeding is at an end.

The Erie City Bank was organized in August 1853, and continued in active business till in December 1856, when it suspended. It continued in this condition till in April 1858, when other and distinct parties undertook to resuscitate it, and had its name changed to the Bank of Commerce. Under this name it continued to do business until the 20th or 21st of November 1860, when it suspended, and on the 10th of January 1862 made an assignment of its effects to S. A. Davenport, which was approved by the court, and a statement of the bank's condition, and an inventory and appraisement of its assets, were afterwards filed. They were referred to three auditors, and in September 1863 a detailed and elaborate report was made by two of the auditors, the other one dissenting from its conclusion, in which they say they are called upon to characterize the management from November 1854 to its suspension as extremely prejudicial to its interests and disastrous to its prospects, and also "that since the time of its resumption in 1858 it appears to have been carefully managed."

Not one word here as to fraudulent insolvency, and of course not a word as to any amount due by the directors. Here, of course, by the terms of the act, the case really ended.

It rested until September 1864, when without authority of law the court, on the application of the assignee, ordered an issue, in which the assignee and the present named defendants were to be the parties, to try the fraudulent insolvency of the Bank of Commerce.

The defendants objected to the whole proceeding, but without avail. The docket entry styles it—"Issue to try the fraudulent insolvency of the Bank of Commerce from the auditors' report."

On the trial of the issue, the defendants offered in evidence the report of the auditors, which was rejected by the court, in which we think there was error, and as the issue grew out of the report, it would seem to have been a proper part of the plaintiff's case, and as he did not choose to produce it, it was the right of the defendants to bring it before the court.

The issue was—was the insolvency fraudulent?—and not whether any of the defendants were culpable or guilty; and there can be legally no finding implicating all or any of the defendants.

The court certainly erred in supposing an investigation not necessary, in order to ascertain whether the insolvency was fraud-

[Wright *v.* Davenport.]

ulent. The appointment of the auditors shows this, for they are "to make a strict investigation of the affairs of such bank," "and they are to report the result of their investigation," and they are not to assume the insolvency to be fraudulent, but, on the contrary, they are by strong implication forbidden to do so.

So when the court "proceeds to the investigation of the matters contained in said report," and shall determine whether the insolvency of such bank was fraudulent or otherwise," it does not assume it to be so, but to depend upon the unbiassed judgment of. the court. So when an issue is directed, the report is naturally the subject of investigation by the jury, and the question is to be tried without any primâ facie imputation of fraud. There is therefore an error running through the answer of the court to the second and third points of the defendants, in asserting an investigation is only to be in rebuttal, when the investigation must be made to show whether it was fraudulent or otherwise.

Upon the whole we think there was error in directing the issue, and that all the proceedings subsequent to the report of the auditors must be reversed. .

AGNEW, J., filed a dissenting opinion, in which WILLIAMS, J., concurred.